# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Frederick Holloway,　　　　　　　　　　　　Case No. 1:16cv1075

　　Plaintiff,　　　　　　　　　　　　　　　Judge Michael R. Barrett

　　　　v.

Kings Dodge, Inc., et al.,

　　Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendants Kings Dodge Inc. and Kenwood Dealer Group, Inc.'s Motion for Summary Judgment. (Doc. 15). Plaintiff Frederick Holloway filed a Memorandum in Opposition (Doc. 18) and Defendants filed a Reply (Doc. 22). Also before the Court is Plaintiff's Motion to Strike Declaration of Robert C. Reichert, Esq. (Doc. 19); and Defendants' Response in Opposition thereto (Doc. 23).

## I.　BACKGROUND

In 1999, Rick Holloway began working as a salesperson in the Dodge automotive dealership owned and operated by Defendants.[1] (Doc. 10, Frederick Holloway Dep. at 36-37).

In September of 2014, Plaintiff told Defendants' office manager, Mandy Huddleson, that he would need to take twelve weeks of leave under the Family Medical

---

[1]Plaintiff has brought his claims against Kings Dodge, Inc. and Kenwood Dealer Group, Inc. Defendants explain that Kenwood provides administrative services, such as payroll, human resources, accounting, and legal services, to the twelve automobile dealerships within it, which includes Kings Dodge. Defendants point out that Plaintiff was solely employed by Kings Dodge and was never employed by Kenwood. Plaintiff responds that Kenwood and Kings Dodge constituted an integrated enterprise, and point to correspondence from Rachel Lemmel, as Director of Human Resources for Kenwood, terminating Plaintiff's employment with Kings Dodge.

Leave Act to undergo surgery to replace his right hip. (Holloway Dep. at 65; Ex. 8). Defendants approved his FMLA leave. (Holloway Dep. Ex. 9). Plaintiff's period of leave was to begin on October 22, 2014 and end on January 13, 2015. (Holloway Dep. Exs. 9 and 10).

On December 4, 2015, Plaintiff's surgeon told him that he would also need to have his left hip replaced and it needed to be done immediately. (Holloway Dep. at 63). Plaintiff called Huddleson to tell her that he needed the other surgery. (Holloway Dep. at 66-67). Plaintiff did not know how much additional leave he would need for the second surgery. (Id. at 67). Plaintiff told Huddleson that he could not return to work and he needed an extension on his period of leave. (Id. at 67, 94-95).

Defendants deny that Plaintiff asked for additional time off. Mark Pittman, Defendants' General Manager for Kings Dodge, testified that Plaintiff told him he was not planning to return to work. (Doc. 12, Mark Pittman Dep. at 30-31).

On December 15, 2014, Rachel Lemmel, Defendants' Director of Human Resources, sent Plaintiff a letter informing him that "[n]ot returning at the expiration of FMLA is considered a voluntary resignation per section 1.08A-E3 [of the employee handbook]." (Doc. 13, Rachel Lemmel Dep., Ex. 10). The next day, Lemmel sent an email to several members of Defendants' staff explaining that Plaintiff would be considered a voluntary resignation on January 13, 2015 because his FMLA leave was expiring on that date. (Lemmel Dep., Ex. 19). The email also stated that if Plaintiff were to apply for an advertised opening, he would be required to provide a "doctor's release stating he is able to stand all day and walk the lot." (Id.)

On January 12, 2015, Plaintiff came into the dealership to clean his office out.

2

(Holloway Dep. at 68). While he was there, Plaintiff spoke with Pittman who told him: "Rick, we like you. We'll hire you back." (Id. at 69). Plaintiff understood that if he came back, he would be treated as if he was a new hire. (Id. at 98).

In August of 2015, Plaintiff called Huddleson and told her that he was ready to come back to work. (Id. at 102). Huddleson asked Plaintiff to have his doctor send a note showing that he was released to return to work. (Id. at 103). However, it is undisputed that Defendants do not normally ask new hires to provide medical releases. (Lemmel Dep. at 39-40). Plaintiff's doctor sent the release. (Id. at 106). A day later, Pittman called Plaintiff and told him: "Rick, I have been asked to call you and tell you that we're doing a new thing, that we're not hiring anybody that's your age that's not a top performer." (Id. at 106-107).[2]

In his deposition, Pittman described Plaintiff's sales numbers as "about average." (Pittman Dep. at 17). The data for the years between 2010 and 2014 bear this out. During that period of time, Plaintiff sold averaged 9.3 vehicles per month. (Doc. 18-2). The average monthly sales of all salespeople was: 9.06 vehicles in 2010, 9.76 vehicles in 2011, 11.17 vehicles in 2012, 9.61 vehicles in 2013, and 10.2 vehicles in 2014. (Id.)

It is undisputed that during this period of time, Defendants were looking to hire a salesperson.[3] By way of background, Defendants explain that from 2012 until 2015, Defendants experienced a steady decline in sales performance compared to other Cincinnati area Chrysler dealers. (Doc. 11, Rachel Reichert Dep. at 41; Doc. 15-2,

---

[2] On September 2, 2015, Pittman also informed Holloway by email that he would not be rehired. The email stated: "I regret to inform you that we have decided to not offer you a job. I do wish you well though." (Holloway Dep., Ex. 14).

[3] On August 24, 2015, Defendants posted an advertisement on CareerBuilder seeking a full-time salesperson. (Carmichael Dep. Ex. 23).

Robert Reichert Decl., ¶ 3). Defendants had slipped from first in sales to third. (Reichert Dep. at 41). In response, Pittman decided to rebuild and reorganize the sales department in the early part of 2015. (Reichert Dep. at 41; Pittman Dep. at 34, 58). Pittman brought in a new sales manager, Jeff Carmichael, and changed the customer management software. (Reichert Dep. at 41-42; Pittman Dep. at 47-48). In the past, Defendants had rehired salespeople who had been released by another dealership within the Kenwood Dealer Group to give them another chance at Kings Dodge. (Pittman Dep. at 37-38, 58). Pittman explained that in order to improve sales they were no longer going to hire people that did an "okay job," but were looking "to find some new people that would make something happen." (Id. at 38).

Carmichael was responsible for hiring the new salespeople. (Pittman Dep. at 39). From February of 2015, when Carmichael started, until July 2016, when Carmichael left, Defendants hired ten employees into the sales department. (Reichert Dep., Ex. 21). Nine of these employees were under the age of forty. (Id.)[4] Robert Reichert, the owner of Kings Dodge, explained Carmichael's approach and why Plaintiff did not get rehired:

> the Sales Department is being rebuilt. Carmichael had moved the Sales Department back from No. 3 in the city -- He had just gotten back to No. 1. He was doing this with, you know, a number of things, but the one thing he didn't want to do was to reintroduce into the Sales Department someone who sold 9 cars a month. He's looking for people who can sell a lot more, and he may have to go through a couple of people without experience – He used a Predictive Index Test to determine these unexperienced people's ability to sell -- and then he would train them, and sometimes you go through two or three, but if he can get a 20-car-a-month person it would be worth the effort.

(Reichert Dep. at 51). Reichert explained that they knew that if they hired Plaintiff they

---

[4]These employees and their corresponding ages are: Jordan Jraisat (31 ); Haley Wolf (20); Jeffrey Parris (38); Lawrence Bunger (39); Patrick McGrath (27); Andrie Scott (24); Michael Hartman (28); Orion Mains (31 ); and Heather Jamison (35). The only employee who was over the age of forty was Christian Pieratt (53).

"were going to get another 9-car-a-month guy, and that just -- that just didn't fit into the plan." (Id. at 52).

Pittman testified that he had no idea that Plaintiff wanted to come back to work until Reichert called him and asked him if he knew Plaintiff wanted to return. (Pittman Dep. at 37). However, in an email dated September 15, 2015, Pittman told Reichert that Plaintiff called him about a job, and that he told Plaintiff to speak with Carmichael about the position. Pittman has no recollection of discussing the decision with Carmichael, who was 32-years old at the time. (Pittman Dep. at 44). Pittman stated that Carmichael had no influence over his decision on whether to rehire Plaintiff. (Pittman Dep. at 64). However, Pittman also testified that Carmichael was responsible for hiring salespersons after he started as the sales manager. (Pittman Dep. at 39).

According to Carmichael, Lemmel called him to ask his thoughts on Plaintiff returning to the dealership. (Carmichael Dep. at 15). Carmichael told Lemmel that he was doing some research on Plaintiff. (Id.) Carmichael testified that after doing this research, he told Pittman that he was not interested in rehiring Plaintiff because of his sales numbers. (Carmichael Dep. at 17).

According to Reichert, he made the decision to not rehire Plaintiff. (Reichert Dep. at 51). Reichert testified: "Carmichael looks at Holloway's last five years of performance and he sold 9 cars a month. . . . There was no reason for Carmichael to take back someone that was doing 9 cars a month . . . . " (Reichert Dep. at 42). Reichert testified that he spoke with Pittman and Carmichael about rehiring Plaintiff, and that Carmichael was "more adamant" than Pittman that Defendants should not rehire Plaintiff, even though Carmichael had not worked with Plaintiff. (Reichert Dep. at 51, 53).

5

In the Amended Complaint, Plaintiff brings the following claims: (1) discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) age discrimination in violation of Ohio Civil Rights Act, Ohio Revised Code § 4112.02 *et seq.*; (3) discrimination and failure to accommodate in violation of the Americans with Disability Act, 42 U.S.C. § 12101, *et seq.*; (5) disability discrimination in violation of Ohio Revised Code § 4112.02, *et seq.* and §4112.99. (Doc. 5)

II. **ANALYSIS**

A. **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

B. **Motion to Strike**

Plaintiff seeks to strike the Declaration of Robert Reichert, which was attached to Defendants' Motion for Summary Judgment. (Doc. 15-2). Plaintiff argues that the declaration contradicts Reichert's earlier deposition testimony. Plaintiff explains that in his deposition, Reichert testified:

> Q: Okay. Tell me what you know about Mr. Holloway's efforts to return to Kings Dodge in August of 2015.
>
> A: I received a call from - I can't remember if it was Mr. Pittman or Jeff

6

> Carmichael - but I had a discussion with both of them about Mr. Holloway's return, and I was the one that said we weren't going to rehire him . . .
> . . .
>
> Q: Did Mr. Pittman or Mr. Carmichael offer an opinion on whether or not Mr. Holloway should be rehired?
>
> A: They did.
>
> Q: All right. What were their opinions?
>
> A: No.
>
> Q: Both of them?
>
> A: Yes.
>
> Q: Did they tell you why they did not believe he should be rehired?
>
> A: Mr. Carmichael was more adamant -- Mr. Carmichael in fairness never worked with Mr. Holloway, but he did inquire amongst the people that worked there, and even beyond that he looked at the statistics, and again these statistics are 9 cars a month . . .

(Reichert Dep. at 51, 53).

Plaintiff points out that in his declaration, Reichert states that he made the decision with Pittman, and there is no reference to Carmichael's involvement in the decision. (See Reichert Decl., ¶ 5).

It is well settled that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). The rationale being that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* This "sham affidavit" doctrine is generally

7

applied against a party who attempts to avoid summary judgment by filing his own affidavit that directly contradicts his own prior sworn testimony. *France v. Lucas*, 836 F.3d 612, 622-23 (6th Cir. 2016).

The Court concludes that while Reichert's declaration could be construed as misleading, Reichert's deposition testimony and the declaration are not contradictory. Reichert's affidavit attempts to highlight his conversation with Pittman, and ignore Carmichael's input into the decision not to hire Plaintiff. What Plaintiff has identified in the affidavit is an omission, not a contradictory statement. Therefore, the sham affidavit doctrine does not apply, and Plaintiff's Motion to Strike Declaration of Robert C. Reichert, Esq. (Doc. 19) is DENIED.

### C. Age Discrimination in Employment Act

The ADEA prohibits an employer from failing or refusing to hire any individual "because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, Section 4112.14 of the Ohio Revised Code provides that no employer shall "discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job." Ohio Rev. Code § 4112.14(A). Age discrimination claims brought under the Ohio statute are "analyzed under the same standards as federal claims brought under the [ADEA]." *Wharton v. Gorman–Rupp Co.*, 309 Fed.Appx. 990, 995 (6th Cir. 2009) (quoting *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012)).

Under the ADEA, a claim of age discrimination may be proven either by direct or by circumstantial evidence. *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)).

To prevail, "it is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's 'because of' language requires that a plaintiff 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision.'" *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)).

### 1. **Direct evidence**

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Id.* (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). In determining whether age was the "but for" cause of the employment decision, "the inquiry includes both a predisposition to discrimination and that the employer acted on that predisposition." *Id.* In evaluating "statements allegedly showing an employer's age bias," the Court considers whether the statements were: (1) made by a decision maker; (2) made in relation to the decision-making process; (3) not isolated, vague, or ambiguous; and (4) made proximate in time to the discriminatory act. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002).

As direct evidence of discrimination, Plaintiff points to Pittman's statement: "we're not hiring anybody that's your age that's not a top performer." While Defendants deny that Pittman made this statement, Defendants acknowledge that for purposes of summary judgment, this Court must accept Plaintiff's version of events. Defendants maintain that Pittman's statement does not constitute direct evidence of discrimination because it does not show that Plaintiff's age was the "but-for" reason Defendants refused to rehire Plaintiff.

9

The Sixth Circuit has explained that statements making a direct reference to age, such as statements about wanting "someone younger" are not ambiguous and, if believed, do not require an inference to conclude that age was the but-for cause of an employment decision. *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 531 (6th Cir. 2014). There is no dispute that Pittman was involved in making the decision of whether to rehire Plaintiff. However, "even when direct evidence of age discrimination has been offered, the question to be asked in deciding an employer's motion for summary judgment is whether the evidence, taken as a whole and in the light most favorable to plaintiff, is sufficient to permit a rational trier of fact to conclude 'that age was the 'but-for' cause of the challenged employer decision.'" *Id.* at 532 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)). Here, the Court concludes that even though Defendants have raised questions regarding Plaintiff's past sales performance, the evidence taken as a whole and in the light most favorable to Plaintiff, a reasonable juror could conclude that Plaintiffs age was the but-for cause of Defendants' decision to not rehire him in August of 2015. Therefore, Defendants are not entitled to summary judgment on Plaintiff's claim of discrimination under the ADEA.

### 2. Circumstantial evidence

The direct and circumstantial "evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Scheick*, 766 F.3d at 529 (quoting *Kline v. TVA*, 128 F.3d 337, 348-49 (6th Cir. 1997)). Nevertheless, the Court will address Plaintiff's claim of age discrimination based upon circumstantial evidence.

ADEA claims based on circumstantial evidence are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973). The plaintiff must first establish a *prima facie* case of discrimination by showing: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "An allegation that the plaintiff was replaced by a younger individual supports an inference of discrimination only if the difference in age is significant." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)).

There appears to be no dispute that Plaintiff has established a prima facie case of age discrimination. Instead, the parties focus on Defendants nondiscriminatory reason for not rehiring Plaintiff – Plaintiff's sales performance. Plaintiff argues that this reason is pretext for discrimination.

Plaintiff has the burden to produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it [failed to hire him]." *Id.* (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). This can be accomplished by showing the employer's reason "had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct." *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012). This inquiry is a commonsense one: "did the employer [fail to hire] the employee for the stated reason or not?" *Blizzard*, 698 F.3d at 283 (quoting *Chen*, 580 F.3d at 400, n. 4).

Here, there is nothing in the record which showed the Defendants had previously expressed dissatisfaction with Plaintiff's sales performance or his failure to be a "top

11

performer." Instead, it was not until Plaintiff asked to be rehired that Pittman stated "we're not hiring anybody that's your age that's not a top performer." Such "discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009). In addition, the record also shows that between February of 2015 and July 2016, Defendants hired ten employees into the sales department, and nine of these employees were under the age of forty. Defendants have admitted that some of these employees had no sales experience at all and Defendants had no way of knowing whether these new employees would be top performers. As Reichert testified, Carmichael would hire unexperienced people "and then he would train them, and sometimes you go through two or three, but if he can get a 20-car-a-month person it would be worth the effort." (Reichert Dep. at 51). Therefore, the record shows that the requirement that a salesperson be a top performer only applied to Plaintiff.

Construing this evidence in favor of Plaintiff, the Court finds that there is a genuine issue of material fact that Defendants' stated reason for not rehiring Plaintiff was pretext for age discrimination. Therefore, even if Defendant was not entitled to summary judgment on Plaintiffs claim of age discrimination based on direct evidence, Defendants are not entitled to summary judgment on Plaintiff's claim of age discrimination based on circumstantial evidence.

### D. <u>Americans with Disability Act</u>

The Americans with Disabilities Act, as amended by the Amendments Act of 2008 ("ADAAA"), makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines the term "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

Plaintiff asserts two basis of liability under the ADA: (1) failure to provide Plaintiff with a reasonable accommodation by refusing to extend his period of leave to cover his second hip surgery; and (2) failure to rehire Plaintiff in August of 2015.

Plaintiff has also brought claims for discrimination under Ohio law. Because Ohio's disability discrimination law parallels the ADA, the same analytical framework applies to Plaintiff's claims under Ohio Revised Code § 4112.02 and § 4112.99. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (citing *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 450 (6th Cir. 2007); *City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 206-207 (Ohio 1998)). Therefore, the analysis of Plaintiff's ADA claims also resolves her state law discrimination claims. *Id.* (citing *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 452 n.4 (6th Cir. 2004)).

### E. ADA failure to accommodate claim

"Failure to provide a reasonable accommodation to a disabled, but otherwise qualified, person in the workplace is deemed unlawful discrimination under the ADA." *Williams v. AT & T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017) (citing 42 U.S.C. § 12112(b)(5)(A); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)).

In order to establish a prima facie case of disability discrimination under the ADA

for failure to accommodate, a plaintiff must show that: "(1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, No. 17-5483, 2018 WL 988895, at *4 (6th Cir. Feb. 21, 2018) (quoting *Johnson v. Cleveland City Sch. Dist.*, 443 Fed.Appx. 974, 982-83 (6th Cir. 2011)). "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Id.*

1. **Disabled**

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(B). A person may also be considered disabled under the ADA if he or she has "a record of such and impairment" or is "regarded as having such an impairment." 42 U.S.C. § 12102(2)(8) & (C). The ADA provides that the definition of disability "shall be construed in favor of broad coverage of individuals...." 42 U.S.C. § 12102(4)(A).[5]

---

[5]As the Sixth Circuit has explained, the law governing the definition of "disabled" under the ADA has been recently altered:

> Having concluded that the courts were defining "disability" too narrowly, Congress amended the ADA in 2008 to state that the term should be construed "in favor of broad coverage ..., to the maximum extent permitted by the [ADA's] terms." 42 U.S.C. § 12102(4)(A); ADA Amendments Act ("ADAAA"), Pub. L. No. 110-325, § 2, 122 Stat. 3553 (2008). Moreover, Congress explicitly rejected a number of standards formulated by the Supreme Court, such as the requirement that the impairment be "permanent or long-term" to qualify as a disability under the ADA. 42 U.S.C. § 12102(4)(D) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."); ADAAA § 2(b)(4) (stating that a purpose of ADAAA is to "reject ... standards enunciated by the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534

Defendants appear to concede that Plaintiff was disabled in December of 2014 when he allegedly requested additional time off for the second hip surgery.

**2. Otherwise qualified**

The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111.

The Sixth Circuit has held that "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998). However, the Sixth Circuit has also explained that "where an employer has already provided an employee with a lengthy period of medical leave, an extension to that leave can be a reasonable accommodation only when its duration is definite." *Maat v. Cty. of Ottawa, Michigan*, 657 F. App'x 404, 412 (6th Cir. 2016) (where employee had already exhausted her FMLA leave, and where the proposed return-to-work date of August 1st was not certain, her request for additional leave was objectively unreasonable) (citing *Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 2000); *Aston v. Tapco International Corp.*, 631 Fed.Appx. 292 (6th Cir. 2015); and *EEOC v. Ford Motor Co.*, 782 F.3d 753 (6th Cir. 2015) (en banc)). Here, it is undisputed that Plaintiff's requested period of leave did not have a definite end. Because Plaintiff cannot show that he was "otherwise qualified" to perform of the position of salesperson when he requested additional leave, Plaintiff has failed to establish a

---

U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)," which included the requirement that an impairment's impact be "permanent or long-term" to qualify as a "substantial limitation"). Congress also cautioned that "the question of whether an individual's impairment is a disability ... should not demand extensive analysis." ADAAA § 2(b)(5).

*Barlia v. MWI Veterinary Supply, Inc.*, No. 17-1185, 2018 WL 327448, at *4 (6th Cir. Jan. 9, 2018).

prima facie case on his failure to accommodate claim under the ADA.

### F. ADA failure to hire claim

Under the ADA, a plaintiff can prove a claim for disability discrimination based on direct or indirect evidence. *Ferrari v. Ford Motor Company*, 826 F.3d 885, 891 (6th Cir. 2016). Here, Plaintiff has not produced any direct evidence of disability discrimination, and instead relies on indirect evidence. When analyzing a discrimination claim based on indirect evidence of discrimination, courts use the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Ferrari*, 826 F.3d at 891 (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1179-182 (6th Cir. 1996)).

Under this approach, the initial burden is on the plaintiff to make out a prima facie case of discrimination by demonstrating that "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiffs disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Barlia v. MW/ Veterinary Supply, Inc.*, No. 17-1185, 2018 WL 327448, at *4 (6th Cir. Jan. 9, 2018) (quoting *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011)).

If the plaintiff establishes a prima facie case of discrimination under the ADA, then the burden shifts the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). If the defendant makes that proffer, then the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reason is merely a pretext for discrimination. *Id.*

Defendants oppose Plaintiff's argument that he was disabled when Defendants decided to not rehire him in August of 2015. Defendants explain in response to the summary judgment motion, Plaintiff for the first time relies upon the "record of disability" prong of the ADA's definition of disability. Defendants argue that Plaintiff should not be permitted at this stage of the proceedings to change his theory of liability. However, the Court finds that even if Plaintiff has established a prima facie case of disability discrimination, Plaintiff has not carried his burden in demonstrating that there is a genuine issue of material fact as to whether Defendants' reason for not rehiring him in August of 2015 was pretext for discrimination.

"To demonstrate pretext, a plaintiff must show both that the employer's proffered reason was not the real reason for its action, and that the employer's real reason was unlawful." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Plaintiff argues that Defendants' stated reason for not rehiring him - Plaintiffs past sales performance - was not the real reason he was not rehired. To demonstrate that the real reason was disability discrimination, Plaintiff points to Defendants' request for a medical release when Plaintiff sought to return to work in August of 2015.

The ADA prohibits an employer from conducting a preemployment "medical examination" or making "inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). However, courts have held that where the applicant is a former

17

employee with a recent known disability applying for re-employment "the employer must be able to assess the extent of the applicant's recovery from inability to perform." *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 677 (1st Cir.1995) (holding employer's request for medical certification from former employee with recent known disability did not violate the§ 12112(d)(2) of the ADA); *see also Brumley v. Pena*, 62 F.3d 277, 279-280 (8th Cir.1995) (finding no violation of the Rehabilitation Act where former employee was required to provide medical clearance to return to work after having been on disability); *Harris v. Harris & Hart, Inc.*, 206 F.3d 838, 840 (9th Cir. 2000) (affirming grant of summary judgment in favor of the employer where employer requested that former employee with a known disability provide a medical release before returning to work on a new project). Accordingly, the Court finds that Defendants' request for a medical release does not show that Defendants' stated reason for failing to rehire Plaintiff was pretext for disability discrimination.

Therefore, the Court concludes that there is no genuine issue of material fact, and Defendant is entitled to summary judgment on Plaintiff's claims under the ADA and Ohio law.

### III.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff's Motion to Strike Declaration of Robert C. Reichert, Esq.  (Doc. 19) is **DENIED**; and

2. Defendants Kings Dodge Inc. and Kenwood Dealer Group, lnc.'s Motion for Summary Judgment (Doc. 15) is DENIED in PART and GRANTED in PART.

    a. Defendants are not entitled to summary judgment on Plaintiff's claims under Age Discrimination in Employment Act and Ohio law;

b. Defendants are entitled to summary judgment on Plaintiff's claims under the Americans with Disability Act and Ohio law.

**IT IS SO ORDERED.**

                                              */s/ Michael R. Barrett*
                                              Michael R. Barrett
                                              United States District Judge